UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD DUANE LONG,<br><br>Petitioner,<br><br>v.<br><br>C. DUCART, Warden,<br><br>Respondents. | Case No.: 17cv2355 MMA (KSC)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS;**<br><br>[Doc. No. 1]<br><br>**DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY** |

## I. INTRODUCTION

Petitioner Chad Duane Long, a state prisoner proceeding pro se with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition" or "Pet."), challenges his 2015 convictions in San Diego Superior Court case os. SCD259571 for assault by means likely to produce great bodily injury, corporal injury to a spouse, and battery, as well as various enhancements. (Pet., ECF No. 1.) The Court has read and considered the Petition, [ECF No. 1], the Answer and Memorandum of Points and Authorities in Support of the Answer [ECF No. 9], the lodgments and other documents filed in this case, and the legal arguments presented by both parties. For the reasons discussed below, the Court **DENIES** the Petition.

## II. FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) (West 2006); *see also Parle v. Fraley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). The state appellate court recounted the facts as follows:

> Long had previously been in a romantic relationship with Brooke Frease. After they broke up, Long saw Frease out with another man, Patrick Harris. Frease said hello to Long and later texted him. Frease went back to her apartment with Harris. Long showed up at Frease's apartment, and she let him in. Long and Harris began to argue, and Frease asked Harris to leave. Long and Frease spent the night together drinking alcohol, talking, and having sex.
>
> The next morning, Long suggested that they go back to his apartment. After they arrived at Long's apartment, Frease got a "weird feeling" and said she wanted to leave. Long became angry and began punching, kicking, and strangling Frease. Long told Frease she was going to die, and Frease lost consciousness more than once. At some point, Long hit Frease with a piece of wood and tried to stab her with a metal tool.
>
> Frease ran out the front door, but Long pursued her. Long continued to attack Frease, who was bleeding heavily from her nose, mouth, ears, and head. Eventually Long left the scene followed by three neighbors, who restrained him. Frease sought assistance at a nearby apartment. Police arrived and arrested Long.
>
> At trial, Long presented testimony from several police officers who had responded to emergency calls by Frease. Frease claimed in each case to have been attacked, but no charges were filed. One officer believed Frease's injuries in one case were self-inflicted. Long also presented testimony from his mother, who denied that he and Frease were ever in a romantic relationship.

(Lodgment No. 7, ECF No. 10-14 at 3.)

///

## III. PROCEDURAL BACKGROUND

On July 9, 2015, the San Diego County District Attorney's Office filed an amended information charging Chad Duane Long with one count of attempted murder, a violation of California Penal Code §§ 187(a)/664 (count one), assault by means likely to produce great bodily injury, a violation of California Penal Code § 245(a)(4) (count two), one count of corporal injury to a spouse, a violation of California Penal Code § 273.5(a) (count three), once count of making a criminal threat, a violation of California Penal Code § 422 (count four), one count of attempting to dissuade a witness, a violation of California Penal Code § 136.1(b)(1) (count five), and one count of battery, a violation of California Penal Code § 242 (count six). (Lodgment No. 3, ECF No. 10-9 at 0006-09.) As to counts one through three, the amended information also alleged that Long personally inflicted great bodily injury under circumstances involving domestic violence, within the meaning of California Penal Code § 12022.7(e), personally inflicted great bodily injury, within the meaning of California Penal Code § 12022.7(a), and that he intended to commit great bodily injury within the meaning of California Penal Code §§ 667(e)(2)(C)(iii) and 1170.12(c)(2)(C)(iii). (*Id.*) Counts one and five were later dismissed by the state court. (*Id.*)

Following a jury trial, Long was convicted of count two, assault by means likely to produce great bodily injury, count three, corporal injury to a spouse, and count six, battery. (*Id.*, ECF No. 10-10 at 39-44.) The jury also found true the allegations associated with those counts. (*Id.*) He was found not guilty of count four, making a criminal threat. (Id.) Long was sentenced to 25 years-to-life plus 14 years. (*Id.* at 175.)

Long appealed his conviction. (Lodgment Nos. 4-6, ECF Nos. 10-11–10-13.) The California Court of Appeal affirmed his conviction in a written, unpublished opinion. (Lodgment No. 7, ECF No. 10-14.) Long thereafter filed a petition for review in the California Supreme Court. (Lodgment No. 8, ECF No. 10-15.) The California Supreme Court denied the petition for review without citation of authority. (Lodgment No. 9, ECF No. 10-16.)

Long filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in this Court on November 20, 2017. (ECF No. 1.) Respondent filed an Answer and Memorandum of Points and Authorities in Support of the Answer ("Answer") on March 12, 2018. (ECF No. 9.) Long filed a Traverse on July 11, 2018. (ECF No. 12.)

## IV. DISCUSSION

Long alleges in his Petition that he was improperly denied his federal constitutional right to represent himself. (Pet., ECF No. 1 at 6, 10-15.) Respondent contends the state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. (Answer, ECF No. 9.)

### A. *Standard of Review*

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. See *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified

the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id*. Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The Court may also grant relief if the state court's decision was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned state court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

B. *Analysis*

Long contends he was denied his federal constitutional right to represent himself as expressed in *Faretta v. California*, 422 U.S. 806 (1975.) Long's first request to represent himself was granted on December 4, 2015. (Lodgment No. 3, ECF No. 10-10 at 298.) The public defender's office was reappointed to represent him on March 4, 2015 at Long's request. (*Id.* at 304.) About a week before his trial was scheduled to begin, Long asked for and received a *Marsden*[1] hearing. (Lodgment No. 1, ECF No. 10-8 at 1.) The

---

[1] Under *People v. Marsden*, 2 Cal. 3d 118 (1970), criminal defendants in California may ask the court to discharge their appointed attorney and appoint a new attorney when their right to effective representation is jeopardized.

5

17cv2355 MMA (KSC)

trial judge denied Long's request for a new attorney, and expressed his concern that Long's mental state and psychiatric issues were impairing his judgment. (Lodgment No. 2, ECF No. 10-8 at 12-16.) At the conclusion of this discussion, the following exchange took place:

> THE DEFENDANT: I'm glad to enlighten you on a lot of things going on. I wish you could have seen it my way.
>
> THE COURT: You know what, I'm not done with you yet.
>
> THE DEFENDANT: And I would like to have –
>
> THE COURT: I'm not done with you yet.
>
> THE DEFENDANT: I would like to go pro to see if that's possible.
>
> THE COURT: I'm not done with you yet. We have one more thing to do here.
>
> Could we get Mr. Fiorito back in here? This record is sealed. It's not to be transcribed unless ordered by the court.
>
> THE DEFENDANT: No. Why would it be sealed?
>
> THE COURT: Because I don't want anyone to see anything inside your case. I want that to be between you and your lawyer only.
>
> THE DEFENDANT: So I'm all ready for an appeal as far as – hopefully you could be my appeal attorney.
>
> THE COURT: We are bringing the people in from outside.

(Lodgment No. 2, ECF No. 10-8 at 16-17.)

After the prosecutor reentered the courtroom, Long was arraigned on an amended information. (Lodgment No. 2, ECF No. 10-1 at 11.) The state court judge does not appear to have considered Long's statement, "I would like to go pro to see if that's possible," as an invocation of *Faretta*.

///

Long raised his *Faretta* claim in the petition for review he filed in the California Supreme Court on direct appeal. (Lodgment No. 8, ECF No. 9-15.) The state supreme court denied the petition without citation of authority. (Lodgment No. 9, ECF No. 10-16.) Thus, this Court must "look through" to the state appellate court's opinion denying the claim as the basis for its analysis. *Ylst*, 501 U.S. at 805-06. Applying California law that is consistent with United States Supreme Court law, that court wrote:

> Long argues that his statement during the *Marsden* hearing, "I would like to go pro to see if that's possible," was a request to represent himself under *Faretta*. "To invoke the constitutional right to self-representation, a criminal defendant must make an unequivocal assertion of that right in a timely manner. [Citation.] 'The court faced with a motion for self-representation should evaluate not only whether the defendant has stated the motion clearly, but also the defendant's conduct and other words. . . . A motion for self-representation made in passing anger or frustration, an ambivalent motion, or one made for the purpose of delay or to frustrate the orderly administration of justice may be denied.' " (*People v. Barnett* (1998) 17 Cal.4th 1044, 1087 (*Barnett*).) " '[T]he *Faretta* right is forfeited unless the defendant "'articulately and unmistakably' " demands to proceed in propria persona.' [Citation.] Because the right to counsel is self-executing and persists unless the defendant affirmatively waives the right, the court must indulge every reasonable inference against such a waiver." (*People v. Boyce* (2014) 59 Cal.4th 672, 703 (*Boyce*).) "In determining on appeal whether the defendant invoked the right to self-representation, we examine the entire record de novo." (*People v. Dent* (2003) 30 Cal.4th 213, 218 (*Dent*).)
>
> *People v. Skaggs* (1996) 44 Cal.App.4th 1 (*Skaggs*) is instructive under the circumstances here. *Skaggs* considered whether the defendant's remark, during a Marsden hearing, that "I don't – I'd like to go pro per if I could," was sufficiently unequivocal to invoke the right to self-representation. (*Id.* at p. 5.) *Skaggs* held it was not: "The statement was made during a hearing on a motion to substitute counsel and was part of [the defendant's] explanation of the problems he was having with his appointed counsel. The comment was obviously aimed at impressing upon the court just how dissatisfied [the defendant] was with his present counsel. Further, the record clearly illustrates the court did not interpret [the defendant's] comments as a *Faretta* motion." (*Id.* at pp. 5-6.)

Viewing the record as a whole, we conclude Long's statement, "I would like to go pro to see if that's possible," was likewise insufficient to invoke Long's right to self-representation under *Faretta*. The statement itself was neither an unequivocal nor an unmistakable articulation of a request to represent himself. (*Boyce*, *supra*, 59 Cal.4th at p. 703; *Barnett*, supra, 17 Cal.4th at p. 1087.) Instead, it was a fleeting comment, made immediately following his *Marsden* hearing, and it apparently went unnoticed by everyone in the hearing. (*See People v. Valdez* (2004) 32 Cal.4th 73, 99 (*Valdez*) ["[T]he fact that defendant made only a single reference to the right to self-representation, immediately following the denial of his *Marsden* motion, further supports the conclusion that defendant did not make an unequivocal *Faretta* motion."].) The court, which was actively engaged in speaking with Long, did not treat Long's comment as a motion under *Faretta*. Long himself did not follow up on his request. When the issue of his representation came up later in the same hearing, Long did not mention his alleged desire to represent himself. Long's previous requests to represent himself, which were ultimately successful, show that Long knew how to invoke this right. He did not unequivocally or unmistakably invoke that right during the *Marsden* hearing at issue here. [FN 2: Given our conclusion, we need not consider whether a properly-made *Faretta* motion would have been timely.]

Long argues, in the alternative, that the trial court erred by not holding a hearing on his request for self-representation. We disagree. Where, as here, a defendant has not made an unequivocal and unmistakable request to represent himself, it is not a valid request and no hearing is necessary. (*Skaggs*, *supra*, 44 Cal.App.4th at p. 7 ["Under these circumstances, the trial court has no sua sponte duty to inquire about defendant's intent when his purpose is not immediately clear."]; *see Valdez*, *supra*, 32 Cal.4th at pp. 99-100.)

Long claims the Supreme Court's holding in *Dent*, *supra*, 30 Cal.4th 213, requires trial courts to conduct a hearing even when a defendant's request for self-representation is equivocal. In a later case, however, the Supreme Court rejected Long's interpretation of *Dent*. In *Valdez*, *supra*, 32 Cal.4th 73, the defendant made a statement regarding self-representation that the Supreme Court found equivocal. (*Id*. at pp. 98-99.) The trial court responded, "I wouldn't let you go pro. per. [sic] on this case," and did not conduct any inquiry into the defendant's request. (*Id*. at p. 98.) Distinguishing *Dent*, the Supreme Court found no error in the trial court's response. (*Id*. at pp. 99-100.) Long has likewise not shown error here.

Even if Long's statement were an unequivocal and unmistakable invocation of his right to represent himself, Long abandoned his request by not seeking a ruling from the court or raising the request again. "[T]he *Faretta* right, once asserted, may be waived or abandoned." (*People v. Dunkle* (2005) 36 Cal.4th 861, 909 (*Dunkle*).) Abandonment may be found where a trial court does not rule on a *Faretta* motion and the defendant does not raise the issue again. (*Skaggs*, *supra*, 44 Cal.App.4th at pp. 7-8; *People v. Kenner* (1990) 223 Cal.App.3d 56, 59 (*Kenner*).)

For example, in *Kenner*, the defendant made a timely and unequivocal request to represent himself. (*Kenner*, *supra*, 223 Cal.App.3d at p. 58.) The trial court set a hearing on defendant's motion, but the defendant did not appear at the hearing because he was in custody in another county. (*Id*. at p. 58.) The defendant missed several more hearings for the same reason. (*Id*. at pp. 58-59.) The defendant eventually appeared, was appointed counsel (who said the *Faretta* motion could be "reserve[d] . . . at the present time"), went through pretrial proceedings, and was convicted following a jury trial. (*Id*. at p. 59.) No further mention was made of the *Faretta* motion. (*Ibid*.) On appeal, the reviewing court held that the defendant had not shown error under *Faretta*. The court explained, "Defendants who sincerely seek to represent themselves have a responsibility to speak up. The world of the trial court is busy and hectic, and it is to be expected that occasionally a court may omit to rule on a motion. When that happens, as here, we believe it is reasonable to require the defendant who wants to take on the task of self-representation to remind the court of the pending motion. Therefore, we hold that on this record, where appellant had both time and opportunity to follow up on his request for a hearing on his *Faretta* motion, and failed to do so, he must be deemed to have abandoned or withdrawn that motion." (*Id*. at p. 62.) Similarly, *Skaggs* found abandonment where the defendant made an equivocal request to represent himself, which the court did not rule on, and never mentioned the request again. (*Skaggs*, *supra*, 44 Cal.App.4th at p. 8.) The court explained, "[The defendant] made a single ambiguous comment about his desire to represent himself. Even if we were to interpret that comment, made in the context of a *Marsden* motion, as an unequivocal request (which we do not), it is clear from the record that the request was never ruled upon. [The defendant's] failure to request such a ruling or to raise the issue again and his silent acceptance of defense counsel's assistance for the remainder of the proceedings in the trial court constitute a waiver or abandonment of any right to self-representation [the defendant] arguably asserted." (*Ibid*.) Both *Kenner* and *Skaggs* were cited with approval by the Supreme Court in *Dunkle*, *supra*, 36 Cal.4th at page 909.

As in *Kenner* and *Skaggs*, Long did not pursue a ruling on his purported request to represent himself. He stayed silent while the court confirmed his counsel's representation of him, and he never again raised the issue of self-representation in pretrial or trial proceedings. Under these circumstances, even if Long had invoked his right to self-representation under *Faretta*, he waived or abandoned it by his subsequent actions. (*Skaggs*, *supra*, 44 Cal.App.4th at pp. 7-8; *Kenner*, *supra*, 223 Cal.App.3d at p. 59; see *Dunkle*, *supra*, 36 Cal.4th at p. 909.)

Long argues that he did not have a sufficient opportunity to seek a ruling on his purported request to represent himself because trial was scheduled to begin in approximately a week. But Long had ample opportunity later in the same hearing to renew his request. Long spoke up at the hearing to complain about other matters, such as the prosecution's amended information. He did not mention self-representation. Long also could have raised his request at the next pretrial hearing or when trial commenced. He did not. Under these circumstances, we conclude Long waived or abandoned his request, even if it were sufficient to invoke his right to self-representation under *Faretta*.

(Lodgment No. 7, ECF No. 10-14 at 4-11.)

The Sixth Amendment to the United States Constitution guarantees a defendant in a criminal case the right to be represented by counsel. *Faretta*, 422 U.S. at 807. The Sixth and Fourteenth Amendments also guarantee a defendant the right to represent himself, but in order to invoke this right, a defendant must waive his Sixth Amendment right to counsel and the waiver must be "knowing, voluntary and intelligent." *See Iowa v. Tovar*, 541 U.S. 77, 88-89 (2004) (citing *Faretta*, 422 U.S. at 806); *see also Faretta*, 422 U.S. at 835. A defendant's *Faretta* request must also be timely, unequivocal and not made for purposes of delay. *Sandoval v. Calderon*, 241 F.3d 765, 774 (9th Cir. 2001). The Ninth Circuit considers three factors when determining whether a *Faretta* request is unequivocal: "the timing of the request, the manner in which the request was made, and whether the defendant repeatedly made the request." *Stenson v. Lambert*, 504 F.3d 873, 882 (9th Cir. 2007). A state court's conclusion that a defendant's *Faretta* request was equivocal is a factual determination entitled to "significant deference" under 28 U.S.C. § 2254(e)(1). *Id.*; *see also Woods v. Sinclair*, 764 F.3d 1109, 1123 (9th Cir. 2014).

During the *Marsden* hearing, Long expressed his concern that his attorney was overwhelmed, was inexperienced, and was not communicating with him. (Lodgment No. 2, ECF No. 10-8 at 3-16.) Long also told the judge he believed his attorney had been tainted by a judge's statement that Long was guilty following the preliminary hearing. (*Id.* at 16.) The judge denied Long's *Marsden* motion and expressed his concern about Long's psychiatric state and his inability to see that his attorney was providing excellent representation. (*Id.* at 13-16.) Long then made the statement, "I would like to go pro to see if possible." (*Id.* at 16.)

The state court considered the three factors outlined in *Stenson* in its determination that, assuming Long's statement was a request to represent himself, the request was not unequivocal and the record supports the state court's conclusions. As to the timing of Long's request, the state court found it was "a fleeting comment, made immediately following his Marsden hearing, and it apparently went unnoticed by everyone in the hearing." (Lodgment No. 7, ECF No. 10-14 at 7.) The Ninth Circuit has held that when the record shows a request for self-representation was made as an emotional or impulsive response to a court ruling, the request is not unequivocal. *Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir. 1990). In *Jackson*, the defendant responded to the trial court's denial of his *Marsden* motion by saying, "Hey, I don't see why [the motion for substitute counsel] isn't granted. I'm doing the filing of the motion [for a new trial]. What good is [appointed trial counsel] doing for me now? I want to fight in pro per then. Relieve him and I do this myself." *Id.* at 889. Similarly, Long stated to the judge, "I'm glad to enlighten you on a lot of things going on. I wish you could have seen it my way," just before making his statement, "I would like to go pro to see if that's possible." (Lodgment No. 2, ECF No. 10-8 at 16.)

The state appellate court also considered "the manner in which the request was made." *Stenson*, 504 F.3d at 882. As the state court correctly noted, Long's statement, "I would like to go pro to see if that's possible" is not an "unmistakable articulation of a request to represent himself." (Lodgment No. 7, ECF No. 10-14 at 7.) As an initial

11

matter, it is not clear to this Court that Long's phrase "go pro to see" meant "go pro se." Indeed, no one in the courtroom, including Long's attorney, appears to have considered Long's statement, "I would like to go pro to see if that's possible," to be a *Faretta* invocation. Moreover, Long had previously successfully invoked his *Faretta* rights and thus knew the correct terminology to use. (*See* Lodgment No. 3, ECF No. 10-10 at 298.) At that time, Long's attorney told the court that Long had "made it very clear that he wants to represent himself." (Lodgment No. 1, ECF No. 10-1 at 3.)

Finally, the state appellate court considered "whether the defendant repeatedly made the same request." *Stenson*, 504 F.3d at 882. As the state court correctly noted, "when the issue of his representation came up later in the [hearing that followed the *Marsden* hearing], Long did not mention his alleged desire to represent himself." (Lodgment No. 7, ECF No. 10-14 at 7.) Following the court's denial of Long's *Marsden* request, Long was arraigned on an amended information. (Lodgment No. 2, ECF No. 10-1 at 11.) The state court judge asked if the public defender's office would remain appointed in Long's case, and the public defender who was present responded "Yes, your Honor," and specifically stated that Long "wish[ed] to proceed with court appointed counsel from my office." (*Id.*) Long did not object. (*Id.*)

Long argued in state court, as he does here, that the trial court was required to hold a *Faretta* hearing after he made his statement, "I would like to go pro to see if that's possible." (Lodgment No. 7, ECF No. 10-14 at 8.) The state appellate court, however, correctly concluded that a *Faretta* hearing is not required until a defendant makes an unequivocal request to represent himself. *United States v. Rice*, 776 F.3d 1021, 1025 (9th Cir. 2015); *see also United States v. Farias*, 618 F.3d 1049, 1051-21 (9th Cir. 2010) ("Once a defendant makes an unequivocal request to proceed pro se, the court must hold a hearing – commonly known as a *Faretta* hearing – to determine whether the defendant is knowingly and intelligently forgoing his right to appointed counsel.") And, the state court's alternative holding, that Long abandoned any *Faretta* request by failing to ask for self-representation again, was also consistent with federal law. *See Patterson v.*

*Asuncion*, 2018 WL 1323624 (9th Cir. 2018) (pet. for cert. filed June 19, 2018) (finding the state court did not unreasonably apply *Faretta* when it concluded a defendant abandoned his motion for self-representation and citing *Sandoval v. Calderon*, 241 F.3d 765, 775 (9th Cir. 2001) as support).[2]

The state court's denial of Long's *Faretta* claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Bell*, 535 U.S. at 694. Nor was the state court's decision based on an unreasonable determination of the facts. 28 U.S.C. § 2254(e)(1). Long is not entitled to relief as to his claim.

## V. CONCLUSION

For the foregoing reasons, the Court **DISMISSES** the petition **with prejudice**. Rule 11 of the Rules Following 28 U.S.C. § 2254 require the District Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254 (West Supp. 2013). A certificate of appealability will issue when the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253; *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005). A "substantial showing" requires a demonstration that "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Beaty v. Stewart*, 303 F.3d 975, 984 (9th Cir. 2002) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Here, the Court concludes Long has not made the required showing, and therefore **DECLINES** to issue a certificate of appealability.

**IT IS SO ORDERED**.

DATED: July 17, 2018

HON. MICHAEL M. ANELLO
United States District Judge

---

[2] Pursuant to Ninth Circuit Rule 36-3(c), "unpublished decisions and orders of [the Ninth Circuit] issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1."